Honorable Joe Resweber Harris County Courthouse Houston, Texas 77002
Re: Construction and maintenance of a nondenominational chapel at a public hospital.
Dear Mr. Resweber:
You inquire whether a nondenominational chapel may be built with private funds at a hospital owned and operated by the Harris County Hospital District. If it may be built, you inquire whether the Hospital District may maintain it.
The Harris County Hospital District was created to provide medical and hospital care for needy inhabitants of the county. Tex. Const. art. 9, § 4; V.T.C.S. art. 4494n; see Attorney General Opinion H-454 (1974). In Attorney General Opinion M-1255 (1972), this office considered whether the Harris County Hospital District could employ chaplains. Noting the contributions chaplains could make toward dealing with the psychological and social aspects of illness, and the long history of chaplaincies in Texas state hospitals, the opinion concluded that the Hospital District had authority under its statute to employ them. In our opinion, the Board of Hospital Managers could determine that the construction and maintenance of a hospital chapel would benefit patients and could accept donations for constructions of the chapel as `not inconsistent with proper management and objects' of the district. See V.T.C.S. art. 4494n, § 15. However, as a public body financed by public funds, Arseneau v. Tarrant County Hospital Dist., 408 S.W.2d 802 (Tex.Civ.App.-Fort Worth 1966, writ ref'd n.r.e.); Attorney General Opinion H-454 (1974), its actions must not violate state and federal constitutional provisions on the separation of church and state.
Article 1, section 6 of the Texas Constitution provides in part:
 All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent.
Article 1, section 7 provides as follows:
 No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purpose.
Church v. Bullock, 109 S.W. 115 (Tex. 1908), the only relevant case construing these provisions, does not indicate that construction and maintenance of the chapel would violate them. In fact, the court noted approvingly that religious services were at that time held in the chapel of the State University and in other public buildings. Several Attorney General Opinions on similar questions indicate that the construction of a nondenominational chapel for voluntary use in a public hospital would not violate the Texas Constitution. Attorney General Opinions WW-1409, WW-1269 (1962); V-940 (1949). In our opinion, the district may build a nondenominational hospital chapel with donated funds and may thereafter maintain the chapel without violating article 1, sections 6 and 7 of the Texas Constitution. The courts of other states, construing similar provisions of their own constitutions, have approved the donation of nondenominational chapels to public institutions. Reichwald v. Catholic Bishop of Chicago,101 N.E. 266 (Ill. 1913) (chapel at county poor farm); People ex rel. New York League for Separation of Church and State v. Lyons,21 N.Y.S.2d 250 (Sup.Ct. 1940) (prison chapel); State v. Williamson,347 P.2d 204 (Okla. 1959) (chapel at state orphanage).
The First Amendment to the United States Constitution which applies to the states by virtue of the Fourteenth Amendment provides in part that
 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . .
The United States Supreme Court has not dealt with a question like the one you present; however, opinions dealing with other issues have referred to circumstances under which the government could build and maintain a nondenominational chapel for voluntary use. In School District of Abington Township v. Schempp,374 U.S. 203 (1963), the court determined that religious exercises in a public school were unconstitutional, but at the same time, some of the opinions indicated that such practices as providing chaplains and churches for persons in the military and in prisons were constitutional. 374 U.S. at 203, 213, 296-99, 306. Justice Brennan in a concurring opinion stated that such practices conceivably violated the establishment clause, but probably could not be struck down without serious interference with religious liberties protected by the first amendment. 374 U.S. at 296-97. In our opinion, the courts would hold that the hospital district may, consistently with the establishment clause, provide a chapel for voluntary use by its patients, who are cut off from other places of worship at a time when they may have particular need for the consolations of religion.
A four part test has been developed for determining whether the establishment clause has been violated:
 First, does the Act reflect a secular legislative purpose? Second, is the primary effect of the Act to advance or inhibit religion? Third, does the administration of the Act foster an excessive government entanglement with religion? Fourth, does the implementation of the Act inhibit the free exercise of religion?
Tilton v. Richardson, 403 U.S. 672, 678 (1971); Attorney General Opinion H-511 (1975). Where a free exercise claim is not at issue, the fourth part is sometimes dropped from the test. See, e.g., Committee for Public Education Religious Liberty v. Nyquist, supra; Letter Advisory No. 128 (1977). See also Attorney General Opinion M-1255 (1972) at 12; Annot., 36 A.L.R.3d 1256 (1971).
We believe the construction and maintenance of a hospital chapel for voluntary use reflects a secular purpose in that it will assist some patients to maintain peace of mind in the face of serious illness, thereby facilitating treatment. See Attorney General Opinion M-1255 (1972) at 8. Its primary effect is neither to advance nor inhibit religion but to avoid both of those effects. We do not believe that the employment of chaplains and maintenance of a chapel in a public hospital foster excessive government entanglement with religion, in view of the need to permit the free exercise of religion by hospital patients. Finally, the provision of a chapel does not inhibit the free exercise of religion but in fact tends to prevent its inhibition. Since the chapel is to be nondenominational, it will not be used to promote one religion and inhibit another.
In our opinion, the Harris County Hospital District may constitutionally permit the construction of a nondenominational chapel with donated funds and may thereafter maintain it for voluntary use. You have asked a legal question based on very few factual details, and we cannot pass on any fact situation beyond that presented here.
 SUMMARY
The Harris County Hospital District has statutory authority to construct and maintain a hospital chapel to be built with donated funds and may do so consistently with state and federal constitutional provisions on separation of church and state.
Very truly yours,
John L. Hill Attorney General of Texas
Approved:
David M. Kendall First Assistant
C. Robert Heath Chairman Opinion Committee